UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KIANE ARCENEAUX DIXON                    CIVIL ACTION NO.13-cv-1378

VERSUS                                   JUDGE DOHERTY

CAROLYN COLVIN,                          MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF
SOCIAL SECURITY

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability

after a closed disability period from May 18, 2006 through October 23, 2009.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED.

### BACKGROUND

This was previously before this Court under the caption *Kiane Arceneaux v.*

*Michael J. Astrue, Commission of Social Security*, Civil Action No. 11-CV-00887.

A Report and Recommendation recommending  remand was issued on April 23,

2012, which was adopted by the district court as Judgment, with instructions for

additional action on remand. [Tr. 562-584].[1]  This appeal comes before the Court for

judicial review of  the ruling after remand.

---

[1]The administrative record and the transcript of the administrative hearing are made a part
of the record at Rec. Doc. 10-1 and 10-2.  Pages are numbered at the bottom right corner, and
transcript references will be made in this document as Tr. ___.

On October 30, 2007, the claimant, Kiane Enrice Arceneaux (sometimes referred to as Kiane Arceneaux Dixon), applied for Supplemental Security Income benefits, alleging a disability onset date of May 18, 2006. [Tr. 63-66].  She alleged that, after an initial work-related injury, she reinjured her back in automobile accidents in May and June, 2007.  She claims that she stopped working on September 12, 2007 because of pain.  A determination was made that she is not disabled.  A hearing was held on January 27, 2009 before Administrative Law Judge W. Thomas Bundy.[Tr. 21-28].  The claimant sought review by the Appeals Council of the ALJ's partially adverse decision, which found that she was disabled for the closed period from May 18, 2006 through October 13, 2008. [Tr. 12-20].  Her request was denied on April 29, 2011. [Tr. 1-6].  The claimant appealed, and on May 14, 2012, in the matter captioned *Kiane Arceneaux v. Michael J. Astrue, Commission of Social Security*, Civil Action No. 11-CV-00887, this Court remanded her case back to the Commissioner for further administrative proceedings in accordance with the fourth sentence of §205(g) of the Social Security Act.  Specifically, the Court  reversed the ALJ finding as to the ending date of the disability period, finding no basis in the record for the selected date, and remanded the case for determination of the appropriate ending date for the period of disability which began May 18, 2006, including, but not limited to "sending the case to the hearing level with instructions

to the Administrative Law Judge to order an updated consultative examination of claimant or an evaluation by claimant's treating physician, specifically as to her residual functional capacity after her back surgery." [Tr. 560-561].

The Commissioner vacated the final decision and remanded the case to an ALJ for further proceedings consistent with the Court's Order. [Tr. 587]. The Administrative Appeals Judge noted the claimant had filed a subsequent claim for Title XVI benefits on June 15, 2011, which created a duplicate claim to the case on remand.  Therefore, the new ALJ was instructed to offer the claimant an opportunity for a new hearing, take any action necessary to complete the administrative record, and issue a new decision on all associated claims. [Tr. 587].

A second hearing was held on September 10, 2012 before a different ALJ. Additional medical evidence was placed into the record, supplementing the previous record to cover the period  from October 26, 2010 (the last record examined by the Court in the previous ruling) to March 28, 2012.  After considering the expanded record evidence and the testimony obtained at the second hearing on September 10, 2012, the ALJ addressed the question of the appropriate ending date for the period of disability that began on May 18, 2006. On November 30, 2012, ALJ Robert Grant issued another partially favorable decision, finding that the claimant's period of disability that began on May 18, 2006  ended October 23, 2009 (an extension of one

year from the prior ruling), because her impairments medically improved as of

October 24, 2009. [Tr. 518]. He further found that beginning October 24, 2009 and

through the decision date, the claimant was "not disabled."  The claimant did not

timely file exceptions to that ruling.  Therefore, it stands as the Commissioner's final

decision for purposes of judicial review.

## APPLICABLE  LEGAL STANDARDS

Any individual, after any final decision of the Commissioner of Social

Security in which he was a party may obtain a review of the decision by a civil

action. 42 U.S.C. 405(g). This Court's review of the Commissioner's decision that

the claimant is not disabled is limited to determining whether that decision was

supported by substantial evidence and whether the proper legal standards were

applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449

(5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is

entitled to make any finding that is supported by substantial evidence, regardless

of whether other conclusions are also permissible, and any findings of fact by the

Commissioner that are supported by substantial evidence are conclusive and must

be affirmed.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Martinez v.

Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel,* 239 F.3d at 704. Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole. *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo,* or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Any conflicts

in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential process, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to her old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.   If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4).

When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments

presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493
U.S. 521, 525 (1990).  If the claimant is not actually working and her impairments
match or are equivalent to one of the listed impairments, the Commissioner is
required to "consider the combined effect of all of the individual's impairments
without regard to whether any such impairment, if considered separately, would be
of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the
combined impairments are compared to the listed impairment most similar to the
claimant's most severe impairment. *Sullivan v. Zebley*, 493 U.S. at 531.

Before going from step three to step four, the Commissioner assesses the
claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). This is a
determination of the most the claimant can still do despite her physical and mental
limitations and is based on all relevant evidence in the claimant's record. 20 CFR §
404.1545(a)(1). The claimant's residual functional capacity (RFC) is used at the
fourth step to determine if the claimant can still do her past relevant work, and at
the fifth step, it is used to determine whether the claimant can adjust to any other
type of work. 20 CFR § 404.1520(e).  When a claimant's RFC is not sufficient to
permit her to continue her former work, then her age, education, and work
experience must be considered in evaluating whether she is capable of performing
any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. §

404.1520.  The testimony of a vocational expert is valuable in this regard, as such an expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

If the claimant is found disabled at any point in the process, the ALJ must also determine if the disability continues through the date of his decision.  In order to find that the claimant's disability does not continue through the date of the decision, the ALJ must show that medical improvement has occurred which is related to the claimant's ability to work, or that an exception applies. 20 C.F.R. §416.994(a).

In most cases the ALJ must also show that the claimant is able to engage in substantial gainful activity.   In making that determination, he must follow an additional seven-step process pursuant to 20 C.F.R. §416.994.  At step one, the ALJ

-8-

determines whether the claimant has an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant has such an impairment, her disability continues. 20 C.F.R. §416.994(b)(5)(i).  At step two, the ALJ must determine whether medical improvement has occurred pursuant to 20 C.F.R. § 416.994(b)(5)(ii).  Medical improvement is any decrease in the medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. §416.994(b)(1)(i).  If medical improvement has occurred, the analysis proceeds to the third step.  If not, the analysis proceeds to the fourth step.

At step three, the ALJ must determine whether the medical improvement is related to the ability to work. 20 C.F.R. §416.994(b)(5)(iii).  Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. §416.994(b)(1)(iii).  If the medical improvement is related to the ability to work, the analysis proceeds to the fifth step. If it is not, the analysis proceeds to the fourth step.  At step four, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. §416.994(b)(5)(iv).  There are two groups of exceptions set out in provisions of 20 C.F.R. §416.994(b)(3) and (b)(4).  If one of the first group exceptions applies, the

analysis proceeds to the next step.  If one of the second group of exceptions applies, the claimant's disability ends.  If none apply, the claimant's disability continues.

At step five, the ALJ must determine whether all the claimant's current impairments in combination are severe. 20 C.F.R. §416.994(b)(5)(v).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  If they do, the analysis proceeds to the next step.  At step six, the ALJ must assess the claimant's residual functional capacity (RFC) based on the current impairments and determine whether she can perform her past relevant work. 20 C.F.R.   §416.994(b)(5)(vi).   If the claimant has the capacity to perform past relevant work, her disability has ended; if not, the analysis proceeds to the last step.

At the last step, the ALJ must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience. 20 C.F.R. §416.994(b)(5)(vii).  If she can, she is no longer disabled.  If she cannot, her disability continues.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

For completeness, the undersigned references and adopts the factual history recited in the previous Report and Recommendation. [Tr. 562-84].  Kiane Arceneaux

Dixon was born on August 2, 1978.  She was 28 years old when she applied for benefits, 31 years old when the first hearing was held, 34 years old at the time of the second hearing, and is now 36 years old.  She has a tenth grade education plus training at a technical college to become a certified nursing assistant (CNA). Since her application for benefits, in January, 2009, she has attended half-day classes to obtain her GED with the hope of becoming a nurse.

After an initial work-related accident, the claimant treated with Dr. Ilyas Munshi, a neurological surgeon.  On June 1, 2006, Dr. Munshi reported that she was complaining of excruciating pain, still working light duty but not doing any heavy lifting.  The claimant saw Dr. Luiz C. deAraujo, another neurological surgeon, on June 12, 2006, and he noted her complaints of the sudden onset of neck and lower back pain starting on May 18, 2006 when she was lifting a patient.  An MRI of the cervical spine on June 23, 2006 was negative.  An MRI of the lumbar spine on June 22, 2006 showed a disc bulge and degenerative disc disease at L4-5 as well as a very equivocal abnormality on the right at L5-S1.  On September 25, 2006, Dr. deAraujo discharged the claimant to Dr. Thomas Laborde, a physiatrist who uses treatment procedures to manage pain without surgery.  On October 16, 2006, he reported that the claimant was doing exercises at home, going to physical therapy, and taking Lortab and Vistaril.  She was cleared for light level activity.

One year later, on October 3, 2007, the claimant began treating with Dr. John Budden.  She complained of low back pain radiating to the left foot with numbness and tingling.  She acknowledged the original injury and reported a subsequent automobile accident, denying that her symptoms were related to the car accident.  Dr. Budden ordered a lumbar MRI that showed an extruded disc fragment.  He referred her to Dr. Louis Blanda, an orthopaedic surgeon..

On November 1, 2007, Dr. Blanda reported that the claimant's symptoms began in May, 2006, when she was injured at work.  She went to physical therapy; her symptoms resolved, and she settled her workers' compensation claim with her employer.  Her pain returned in May, 2007, when her husband pushed her off a chair and she landed on her buttocks.  Then she was injured in a second automobile accident in June, 2007, and in a third motor vehicle accident in September, 2007.

On her first visit with Dr. Blanda, the claimant complained of constant low back pain that she rated a nine on a scale of one to ten, radiating into her buttocks and legs with numbness in both feet, difficulty sleeping, and urinary frequency.  She also reported neck pain associated with headaches and pain across the top of her shoulders that she claimed began in October 2007.  Dr. Blanda recommended a decompression and diskectomy with pedicle screw fusion and graft at L4-5 and L5-S1. Surgery was performed December 5, 2007.  Dr. Blanda's operative report indicates that a possible

-12-

congenital anomaly with the pedicles prevented an instrumented fusion from being performed.  Instead, Dr. Blanda performed a  bilateral decompression at L4-5 with foraminotomies and discectomy on the left; L5-S1 exploration with foraminotomy on the right; bilateral non-instrumented fusion at L4-5 and L5-S1; and preparation of bone graft.

The claimant  followed up with Dr. Blanda on December 20, and 27, 2007, January 10, 2008, February 21, 2008, and May 29, 2008.  At the May, 2008 visit, she reported that she had been involved in a domestic dispute with her husband and been placed in handcuffs for approximately forty-five minutes, resulting in increased low back pain and left leg pain.  On June 26, 2008, the claimant was treated in the emergency room at Medical Center of Southwest Louisiana in Lafayette, Louisiana for back pain.  She reported that she had been having backache since the handcuffing incident. She was prescribed medications and advised to follow up with Dr. Blanda, which she did on July 17 and August 14, 2008.  At that time she was reporting continued back pain.

The initial ALJ hearing was held on January 27, 2009. After the hearing, and before the ALJ issued his decision, additional medical evidence was made a part of the record, including the claimant's return to Dr. Blanda on February 27, 2009,

reporting occasional neck pain and a bigger problem with SI joint pain on the right, which Dr. Blanda explained as piriformis syndrome.

On April 16, 2009, the ALJ rendered his decision, finding that the claimant was disabled from May 18, 2006 through October 13, 2008, but not thereafter.  On the same day, the claimant again sought treatment at the emergency room at Medical Center of Southwest Louisiana, complaining of chronic back pain, described to be nine on a scale of one to ten.  She was given pain medication and advised to follow up with her doctor.

On June 2, 2009, the claimant returned to the emergency room at Medical Center of Southwest Louisiana, reporting that she had been in a fourth motor vehicle accident.  Her complaint was of mild low back pain.  She also saw Dr. Blanda  the same day.  His report states that the patient was involved in a motor vehicle accident that day and that she would be seen "on a different account at a later date" with regard to that accident, but seen "on this account routinely in six months." [Tr. 480].  On August 31, 2009, the claimant failed to keep her appointment, but called Dr. Blanda's office and reported that she could not come in "on a new account due to new accident because attorney is not authorizing it yet." [Tr. 481].

On October 23, 2009, Dr. Blanda drafted a letter "To Whom It May Concern," confirming his treatment of the claimant since October, 2007; his performance of an

L4-5, L5-S1 decompression with pedicle screw fusion on December 4, 2007; and his opinion that the claimant had "incurred a 20% permanent physical impairment and has light duty restrictions." [Tr. 495].

On December 3, 2009, Dr. Blanda noted that the claimant was experiencing continued low back pain, with occasional radicular type symptoms in both legs, greater on the left side rather than the right. She had tried to return to work as a CNA but had to stop after two weeks because of back pain. X-rays that day showed a healed fusion with "copious bone graft material about the graft site" and good alignment of the spine. Dr. Blanda did not believe additional X-rays were necessary, and he again stated that "[s]he is okay for light duty." [Tr. 479].

On June 8, 2010, the claimant consulted with Dr. Robert D. Franklin concerning injuries sustained in a fifth motor vehicle accident on May 12, 2010. [Tr. 782-83]. She told Dr. Franklin that she had fully recovered from the motor vehicle accident of October, 2009 before the most recent accident occurred. She also said she was receiving pain management from Dr. Blanda for her chronic low back and that her pain was constant and unbearable. Dr. Franklin diagnosed cervical and lumbar strains and recommended home exercises, finding physical therapy to be unnecessary at that time. On June 10, 2010, the claimant underwent cervical and lumbar MRIs. The cervical disk contour was noted to be within normal limits at C4-5

(which had previously shown extremely minimal diffuse annular bulge on prior studies).   At C6-7, the study showed no change from prior exams, an extremely minimal diffuse annular bulge without stenosis. The lumbar study showed post-surgery changes, with no interval change from previous studies; no central canal or significant foraminal stenosis and bilateral facet arthrosis. [Tr. 484-85].  On June 29,2010, Dr. Franklin referred the claimant back to Dr. Blanda. [Tr. 784].

On her return to Dr. Blanda on September 30, 2010, the claimant complained of constant neck and back pain and as a result of the May, 2010 motor vehicle accident. [Tr. 766-69]. Dr. Blanda's notes indicate he had not seen the claimant since December, 2009. She reported that her attorney had referred her to Dr. Franklin.  At this visit, she  rated her neck pain as a six on a scale of one to ten and complained of pain and numbness in both arms and aching, burning pain in her mid lower back, which she rated an eight.  She reported radiating pain into both legs with pins and needles sensations in both feet.  X-rays revealed straightening of the cervical spine and marked instability at L4-5, with possible healed fusion and grade 1 listhesis.  The patient's hips and SI joint were within normal limits.  Dr. Blanda prescribed pain medication, recommended physical therapy, and ordered EMG/nerve conduction studies.

The claimant again followed up with Dr. Blanda on October 26, 2010.  She had not had the recommended studies; she had attended physical therapy three times, but had quit because of discomfort.  On examination, she had positive straight leg raises on the left with low back pain, but equal strength bilaterally.  Her medications were refilled with the addition of a sleep aid, and she was scheduled for a return visit in two months. [Tr. 824]. EMG/Nerve conduction tests were subsequently done in December, 2010, with essentially normal results, with no clear-cut findings of entrapment neuropathy or radiculopathy. [Tr. 771].

On December 9, 2010, Dr. Blanda noted the claimant's continued pain complaints and her report that pain was getting worse, without help from her medications.  She reported that she had been doing better and was working before the recent auto accident. [Tr. 823]. Dr. Blanda recommended a lumbar epidural steroid injection and scheduled a return visit in 6-8 weeks.  At a follow up visit on January 25, 2011, the claimant had yet to have the recommended injections, and her complaints and the doctor's exam findings were unchanged. [Tr. 829].

On February 17, 2011, Dr. Blanda reviewed X-rays which showed significant instability at L4-5, with grade 1 spondylolisthesis.  He noted these were new findings since the motor vehicle accident.  He added that the claimant was not getting any better; the injections had not helped, and she needed surgery. [Tr. 828].

-17-

On March 1, 2011, the claimant was seen by Dr. John Martin on referral from Dr. Blanda.  The claimant reported times when she is barely able to bear weight on her right leg.  She reported that neither physical therapy nor a back brace helped her symptoms.  She described tiresome and irritable neck pain most of the time.  She associated all pain symptoms with the May, 2010 auto accident, reporting that before the accident, her condition had improved to the point where she was performing part-time sitter work. [Tr. 789]. Dr. Martin diagnosed Postlumbar laminectomy pain syndrome; fibrosis with facet arthrosis at L4-5; lumbar radiculopathy, bilateral lower extremities; and spinal enthesopathy with involvement of the right lower levator scapula. [Tr. 792-93]. He recommended and administered an epidural steroid injection in the lumbar spine and a myofascial trigger point injection at the base of the neck. [Tr. 786-87]. Finally, he opined that "[t]he patient's work restrictions of inability to maintain gainful employment in her present condition will continue with ongoing assessments made at her follow up appointment." [Tr. 794]. There is no record that the claimant ever returned to Dr. Martin for follow up.

By May 17, 2011, the claimant returned to see Dr. Blanda with the report that the recommended surgery had not yet been authorized.  She continued with complaints of back, neck and thigh pains and bladder accidents.  She reported swelling in her hands.  On examination, she had equal grip strength at 5 out of 5.

-18-

Intrinsics and tip pinch were intact.  She had a positive right straight leg raise with buttock and back pain only and she had equal lower extremity strength at 4 out of 5. Deep tendon reflexes were 2+ throughout[2].  Her medications were refilled, with the addition of an anti-inflammatory medication. [Tr. 827].

On June 15, 2011, the claimant filed a new claim for disability, alleging that leg pain and chronic low back pain make her unable to function and/or work. [Tr. 590].

On July 19, 2011, the claimant returned to Dr. Blanda for follow up.  On examination, straight leg raising tests were negative bilaterally; lower extremities strength was noted to be 4 out of 5 bilaterally, and deep tendon reflexes were 2+ throughout except for the left Achilles which was a trace. [Tr. 826].

On August 30, 2011, a Residual Functional Capacity assessment was done by medical consultant Dr. Timothy Honigman in response to the claimant's June 15, 2011 disability claim. [Tr. 593-94].  He found that the claimant could occasionally lift 20 pounds and frequently lift 10 pounds.  She could stand/walk with normal breaks for about 6 hours in an 8 hour day and sit for about 6 hours.  She had no manipulative, visual, communicative or environmental limitations, and some postural

---

[2]When written on a chart, a reflex of 2+ is normal. Gray, Attorneys Textbook of Medicine (New York: Matthew Bender 1966), ¶85.35.

limitations.  He cited to records from Dr. Blanda from September, 2010, the doctor's more recent surgical recommendation and negative/normal exam findings to support his assessment.  He agreed with the light work RFC assessment by others. [Tr. 779].

On September 20, 2011, Dr. Blanda's office generated a Work Status Report of "No work," bearing the doctor's signature stamp. [Tr. 780].  A progress note from that date indicates that the claimant "was working and doing well until the second injury of May, 2010." [Tr. 825].

On December 13, 2011, the claimant returned to Dr. Blanda with continued low back pain and bilateral leg pain complaints.  She rated the pain, when present, as severe.  She also complained of frequent headaches and that her nerves are bad.  Her examination was basically unchanged.  She was given a prescription for Fioricet for her headaches and Xanax for anxiety, and she was scheduled to return in three months. [Tr. 822]. On her return on March 13, 2012, the claimant reported her pain was getting worse.  She reported a family history of brain aneurysms, and Dr. Blanda sent her for a brain MRA.   X-rays taken on this date showed persistent spondylolistheses at L4-5.  On examination, the claimant had positive spasm, with equal strength. [Tr. 821].  The MRA of the claimant's head showed no abnormality. [Tr. 833].    There are no indications in the record of treatment beyond March 28, 2012, the date of the MRA, despite correspondence from SSA to the claimant's

-20-

counsel in July, 2012, inviting submission of such records per the claimant's continuing responsibility. [Tr. 752-53].

*The Administrative Hearing:*

The second administrative hearing was convened by ALJ Judge Robert Grant on September 10, 2012, consistent with the directive of the District Court and the Appeals Council.  The claimant described her daily medications to include Lortab four times a day for chronic back pain, Percocet once a day for breakthrough pain, Ambien at night for sleep, and Lyrica for nerve pain.  She reported that additional surgery remains pending as her attorney waits to learn the insurance policy limits of the adverse driver in the motor vehicle accident  she had two years earlier.  She described pain at a level of 8 out of 10, which radiates into both legs, worse on the left. [Tr. 530].  She described joint pain and swelling in both hands and arms.  She had on a 'no work' status with her treating physician Dr. Blanda since December, 2011. [Tr. 531].  She has problems dressing and bathing sometimes, and she does little around her home due to pain.  On a typical day, she rises at about 6:00 a.m. and gets her children up, eats breakfast, takes medications, sees her children off and gets ready for school herself.  She attends school from noon to 3:00 p.m. studying for her GED. [Tr. 532].  She has a tenth grade education and can read, write and do basic math.  She is doing well in school and hopes to pursue a nursing career. [Tr. 536].

-21-

The claimant described her last work as a CNA aide in 2009.  She worked two weeks.  In response to questioning by the ALJ, she acknowledged that she did other work in 2011 hosting parties with a friend. [Tr. 533].  She reported that she can lift nothing at all, and can walk only a short distance before needing a break.  She can sit or stand in one spot for about 15 minutes before needing a break. [Tr. 533-34].  She testifed she had improved after her surgery in 2007, but after her last auto accident, she has not tried to work. [Tr. 535].  She described some days which are worse than others, and she indicated that there are more bad days than good days. [Tr. 537].

Testimony was also taken from Vocational Expert Thomas G. Mungall, III.  As to the claimant's past work, the VE noted that the work of a CNA/nurse assistant is considered medium, semi-skilled work.   The more recent self-employment described by the claimant (hosting parties) could not be related to a DOT title. [Tr. 538].

The ALJ asked the VE to assume a hypothetical individual of the same age, education and work experience as the claimant with limitations to the full range of sedentary work (lifting only 10 pounds occasionally, walking only two hours out of eight, and sitting for six hours out of eight, with normal breaks).  The VE opined that such an individual could not perform any of the claimant's past work. [Tr. 539].  Nevertheless, he opined there are other jobs in the national or regional economy

which such a person could perform.  He offered two representative samples: hospital admitting clerk (sedentary, semi-skilled, SVP-4[3]; 200,150 in the national economy and 1,400 in Louisiana); and surveillance system monitor (sedentary, unskilled, SVP-2; 74,740 in the national economy and 1,600 in Louisiana). [Tr. 539].

A second hypothetical was posed to the VE, assuming the same individual with the claimant's age, education and work experience, but able to lift no more than 1-2 pounds, stand/walk only a few minutes during the workday, and unable to sit for six of eight hours in a work day.  The VE testified there are no other jobs in the national or regional economy which that person could perform. [Tr. 539].

**The ALJ Determination:**

Since there is no dispute that the claimant was disabled as of the alleged onset date of May 18, 2006, and since the district court upheld the starting date of disability, the ALJ properly focused on the question whether the claimant's disability continued through the date of the decision at issue, following the multi-step process discussed above and acknowledged by the ALJ in his decision.

---

[3]     Specific Vocational Preparation (SVP) refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance in a specific job.  SVP of 4 suggests 3-6 months; SVP of 2 is anything beyond a short demonstration up to and including 1 month. U.S.Dept. Of Labor (1991). Dictionary of Occupational Titles (Rev. 4th ed.).

-23-

At step one, he determined that the claimant does not have an impairment or combination of impairments which meets or equals the severity of an impairment in the listings.  The ALJ explained that the claimant advanced no argument on the question, and he found no evidence in the record to warrant a different conclusion. [Tr. 514].  The claimant does not challenge this finding on appeal.

At step two, the ALJ determined that medical improvement occurred as of October 24, 2009, despite the fact that the claimant continued with intermittent treatment following that date.  The bases for the finding are recited in the decision as (a) the report of treating physician Dr. Blanda on October 23, 2009, to which the ALJ gave great weight, that following her long-term treatment and 2007 decompression/fusion surgery, the claimant has a 20% permanent physical impairment and has light duty restrictions [Tr. 515]; (b) Dr. Blanda's follow-up report in December, 2009 that the claimant was still "okay for light duty"[Tr. 516]; and © the subsequent notes of Drs. Blanda and Franklin in May and June, 2010, documenting continued subjective pain complaints, but noting no new pathology or interval changes on MRI studies from previous 2008 studies, despite a reported motor vehicle accident in May, 2010. [Tr. 516].  This finding is challenged by the claimant.

-24-

At step three, the ALJ found that the claimant's medical improvement is related to her ability to work because there has been an increase in her RFC. Specifically, he found that in comparing the claimant's RFC for the period of recognized disability with the RFC beginning October 24, 2009, the claimant's functional capacity for basic work activities has increased. [Tr. 514, 517].

At step four, the ALJ did not make a finding that any exception to medical improvement applies in this case. Thus, the analysis proceeded to step five. The claimant has not challenged this finding.

At step five, the ALJ found that from May 18, 2006 through October 23, 2009, the claimant had the severe impairment of lumbar disc disease-status post lumbar fusion (20 C.F.R. §416.920(c)). [Tr. 513]. He noted that the claimant has not developed any new impairment since October 24, 2009, and therefore her current severe impairments remain the same. [Tr. 516].

At step six, after consideration of the entire record, the ALJ assessed the claimant's RFC based on the current impairments and determined that as of October 24, 2009, the claimant had the RFC to perform the full range of sedentary work. [Tr. 517]. He properly cited to the claimant's testimony, her earnings records from 2009 and 2010, and to the objective evidence in the record in arriving at the RFC. While he considered the claimant's statements concerning the intensity, persistence and

limiting effects of her symptoms to be "generally credible" from May 18, 2006

through October 23, 2009, he found her statements to be "not credible" beginning

October 24, 2009 to the extent they are inconsistent with the RFC.  He cited the

inconsistency of the claimant's statements with her earnings records and her long

delay in pursuing treatment recommended by her doctor. [Tr. 517].  He gave no

weight to the "no work status" notes by Dr. Blanda in 2011 and 2012 since no

objective records accompanied those statements except a single X-ray, and he found

that the opinion was based on the claimant's subjective reports of increasing pain and

disability.  At step seven, the ALJ determined that based on the Medical-Vocational

Guidelines, Rule 201.25, beginning October 24, 2009, there are jobs that exist in

significant numbers in the national economy that the claimant can perform.  On that

conclusion, the ALJ made a finding of "not disabled" as of October 24, 2009 and that

the claimant's disability ended on that date. [Tr. 518].

## ASSIGNMENT OF ERRORS

At issue in this appeal is the ALJ's decision, on remand, that the claimant was

disabled from May 18, 2006 through October 23, 2009, after which she had reached

medical improvement sufficient to enable her to perform sedentary work.   The

claimant asserts that the ALJ committed reversible error in disregarding the mandate

of the district court as set out in the Judgment of May 14, 2012 to obtain a

consultative examination or evidence from the claimant's treating physician to determine her residual capacity. [Rec. Doc. 12, p. 2].

## DISCUSSION

### *The ALJ accessed additional treatment records and opinions from the claimant's treating physicians which he used in determining the RFC.*

When a federal court analyzes the evidence, and finds it insufficient to support a conclusion that a claimant is capable of working, the ALJ and Appeals Council, upon remand, may not make a finding of non-disability based upon that same evidence. *Wilder v. Apfel*, 153 F.3d 799, 803(7th Cir. 1998). In the Judgment entered May 14, 2012, the district court remanded the case for determination of the appropriate ending date for the period of disability which began May 18, 2006, including, but not limited to "sending the case to the hearing level with instructions to the Adminisrative Law Judge to order an updated consultative examination of claimant or an evaluation by claimant's treating physician, specifically as to her residual functional capacity after her back surgery." [Tr. 560-561]. The claimant argues that the ALJ failed to follow this directive. The undersigned disagrees, pointing first to the district court's use of the disjunctive "or" in the instruction. Based on the language of the remand order, the ALJ was not compelled to order a new updated consultative examination of the claimant; he could alternatively obtain

evaluation(s) by the claimant's treating physician(s) as to her RFC after her surgery. The record demonstrates that the claimant had only one surgery, in 2007, and records of the post-surgery treatment and evaluation by Dr. Blanda and others after that surgery spanning five years, were introduced as evidence into the record and reviewed by the ALJ on remand.

The initial ALJ decision is dated April 16, 2009. After the date of that decision when the matter was submitted for judicial review, additional evidence was placed into the record, including the reports of Dr. Blanda from October and December, 2009 and others. While those records were noted by the court in the decision to remand, they had not been considered by the first ALJ. Since the matter was remanded to a new ALJ, who had not reviewed any of the record, the post-decision records from treating physicians were new and available  to him for consideration. Further, additional medical records were submitted by the claimant's attorney, covering medical treatment through March, 2012, including the newer assessment by Dr. John Martin, as discussed at length above. Finally, the ALJ obtained the additional RFC assessment by medical consultant Dr. Timothy Honigman on August 31, 2011. Thus, the second ALJ to consider this case, on remand, had the benefit of three additional years of treatment records and medical evaluations of the claimant from three treating physicians and one medical consultant.

If the ALJ does not have before him sufficient facts on which to make an informed decision, his decision is not supported by substantial evidence. *McGee v. Weinberger*, 518, F.2d 330, 331 (5th Cir. 1977). When "the existing medical evidence is inadequate to make an informed disability determination, the Commissioner has a duty to develop the record by recontacting a claimant's medical sources or by referring the claimant for a consulting exam." *Jessee v. Barnhart*, 419 F.Supp.2d 919, 933-34 (S.D. Tex. 2006). In the instant case, on the record presented, it is the finding of the undersigned that the significant medical evidence placed into the record after the remanded ALJ decision is reasonably considered "updated" evidence consistent with the district court's instruction, which had not been considered by the previous ALJ and was new to the second ALJ.  It was not necessary that the ALJ order a new and separate evaluation.

***The ALJ's finding that the claimant's disability period ended as of October 24, 2009 is supported by substantial evidence in the record.***

The previous ALJ decision was remanded when the date identified as the disability period end date (October 13, 2008) could not be linked or correlated to any document, event,  medical opinion, or other reference in the administrative record. [Rec. Doc. 11, p. 21]. That error was corrected on remand.  The record contains substantial evidence of improvement in the claimant's condition beginning in

October, 2009.  Starting with Dr. Blanda's disability assessment of October 23,2009 that the claimant, with a 20% permanent disability, could do light work, the record contains multiple other indicators of improvement, including Dr. Blanda's December 3, 2009 statement that despite the patient's complaints that she was unable to do her former work, she was nevertheless "okay for light work."  On June 8, 2010, the claimant herself reported to Dr. Franklin that she had fully recovered from her October, 2009 motor vehicle accident.  On December 9, 2010, she made similar reports to Dr. Blanda that she was doing better and working before her  accident in May, 2010. Earnings records and the claimant's acknowledgment of self-employment in 2011 further support the improvement conclusion.  It is the finding of the undersigned that the end date of October 24, 2009 is supported by substantial evidence, and there is no indication that the ALJ applied an incorrect legal standard in reaching his conclusion.

***The ALJ's finding that the claimant was "not disabled" as of the decision date is supported by substantial evidence in the record.***

The claimant's specification of errors on this appeal was confined to the alleged failure by the ALJ to obtain additional evidence to determine her residual capacity. [Rec. Doc. 12, p. 2] Nevertheless, the undersigned also considers the ALJ's finding that the claimant was "not disabled" as of the decision date of

-30-

November 30, 2012.  Specifically, the ALJ found that medical improvement

occurred as of October 24, 2009, the date the claimant's disability ended. [Tr. 516]

Although she maintained the same severe impairments after that date, her treating

physician declared her ability to do light work on and after that date, to which

opinion the ALJ gave great weight. [Tr. 515].

The ALJ considered records of medical treatment following the

improvement date, noting the claimant's continued subjective pain complaints, but

also noting the absence of new pathology findings or other objective evidence to

warrant a change in the finding of improvement and the RFC finding that she

could do sedentary work.  The ALJ further noted the claimant's ability to drive,

her attendance at GED classes and her efforts to return to her former medium-

work job as a CNA.  He noted her earnings records from 2009 and 2010 as well as

her acknowledged self-employment in 2011, and her only intermittent medical

treatment during that period. [Tr. 517]. The ALJ found these facts support the

finding that the claimant had the ability to return to work, at least at the sedentary

level, in 2009 and forward.

In arriving at his finding, the ALJ did not ignore the claimant's complaints

of severe pain.  He found, however, that the objective evidence did not support the

degree of pain and limitation alleged by the claimant after the improvement date,

giving detailed reasons for his finding. [Tr. 517-18].  He found that the claimant's

statements regarding intensity, persistence and limiting effects of her symptoms

are "generally credible from May 18, 2006 through October 23, 2009," but that

"these symptoms are not credible beginning October 24, 2009, to the extent they

are inconsistent with the residual functional capacity assessment." [Tr. 514, 517].

The task of weighing the evidence is in the sole province of the ALJ.  *Chambliss*

*v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ need not give greater

weight to a claimant's subjective complaints than to the objective medical

evidence*. Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  Further, he may

discount a claimant's subjective complaints if there are inconsistencies between

the alleged symptoms/limitations and the evidence as a whole.  *Vaughn v. Shalala*,

58 F.3d 129, 131 (5th Cir. 1995).  On the issue of the claimant's credibility, the

ALJ found that the claimant's medically determinable impairments could

reasonably be expected to produce her alleged symptoms. Consequently, he was

required to evaluate the  intensity, persistence, and limiting effects of her

symptoms.  SSR 96-7p. The Fifth Circuit has held that although an ALJ "is bound

. . . to explain his reasons for rejecting a claimant's complaints of pain," he is not

required to "follow formalistic rules in his articulation." *Falco v. Shalala*, 27 F.3d

at 164.  In judging credibility, the ALJ may consider the effectiveness of

treatment.  *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990).  He may keep

in mind a tendency on the part of a claimant to exaggerate symptoms to obtain

benefits.  *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).  He may discount a

claimant's credibility for inconsistencies between subjective testimony and

objective evidence. *Chambliss v. Massanari*, 269 F.3d at 522; *Reyes v. Sullivan*,

915 F.2d 151, 155 (5th Cir. 1990).  To make a finding that substantial evidence

does not exist, a reviewing court must conclude there is a "conspicuous absence of

credible choices" or "no contrary medical evidence."  *Johnson v. Bowen*, 864 F.2d

340, 343-344 (5th Cir. 1988); citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.

1983).  The undersigned finds that the ALJ's narrative was sufficient on these

issues, and his decision is based on substantial evidence in the record.

     The ALJ also specifically addressed the opinion notes of Dr. Blanda in late

2011 and early 2012 that the claimant was on a "no work status." [Tr. 518].  He

gave those statements no weight, as they were found not to be consistent with or

supported by the objective evidence.   While ordinarily, the opinions of a treating

physician familiar with the claimant's injuries, treatments, and responses should be

accorded considerable weight in determining disability, the treating physician's

opinions are not conclusive and "the ALJ has the sole responsibility for

determining the claimant's disability status." *Moore v. Sullivan,* 919 F.2d 901, 905

(5th Cir.1990).  When good cause is shown, less weight, little weight, or even no weight may be given to the physician's opinion. The good cause exceptions recognized by the courts include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott v. Heckler,* 770 F.2d 482, 485(5th Cir. 1985).  See also *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).  Further, since the 'no work' opinions are not medical opinions, they may be considered to have invaded the ultimate question of disability reserved for the Commissioner and are entitled to no special significance. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. §416.927(d).

## CONCLUSION AND RECOMMENDATION

The Court finds that the Commissioner's ruling that the claimant's disability (which undisputedly began May 18, 2006) ended on October 24, 2009 because she was capable of performing sedentary work as of that date resulted from the application of the appropriate legal standards, and it is supported by substantial evidence.  Accordingly,

**IT IS THE RECOMMENDED** that the decision of the Commissioner be AFFIRMED.

-34-

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 13th day of August, 2014.


_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE


-35-